UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY KEMP,

                Petitioner,

                          No. 20 Civ. 9121 (RA)(SN)

        v.

JOSEPH NOETH,

                Respondent.


**MEMORANDUM OF LAW IN OPPOSITION TO
PETITION FOR A WRIT OF HABEAS CORPUS**


LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Respondent
28 Liberty Street
New York, New York 10005
(212) 416-6072

PRISCILLA STEWARD
MATTHEW KELLER
 *Assistant Attorneys General*
    *of Counsel*

Dated: April 14, 2021

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 5

    A.   Pretrial Proceedings ...................................................................... 5

    B.   The Trial ...................................................................................... 5

    C.   Direct Appeal ............................................................................. 11

ARGUMENT .......................................................................................................... 13

    POINT I: PETITIONER'S INEFFECTIVE COUNSEL AND NEWLY
    DISCOVERED EVIDENCE CLAIMS SHOULD BE DISMISSED
    BECAUSE THEY LACK ANY SUPPORTING ALLEGATIONS. IN ANY
    EVENT, BOTH CLAIMS ARE WHOLLY UNEXHAUSTED. ............................... 13

        A.   The Ineffective Counsel and Newly Discovered Evidence Claims
            Should Be Dismissed For Lack of Any Supporting Allegations ............. 13

        B.   The Ineffective Counsel and New Evidence Claims Are Wholly
            Unexhausted ....................................................................................... 14

    POINT II: PETITIONER'S WEIGHT OF THE EVIDENCE CLAIM IS NOT
    COGNIZABLE ON HABEAS REVIEW. ANY LEGAL SUFFICIENCY
    CLAIM SUGGESTED BY THE PETITION IS WHOLLY UNEXHAUSTED
    AND, IN ANY EVENT, MERITLESS. .................................................................. 15

        A.   The Claim is Not Cognizable. ................................................................ 16

        B.   Construed as a Legal Sufficiency Claim, the Claim is
            Unexhausted and Meritless. .................................................................. 16

    POINT III: THE EXCESSIVE SENTENCE CLAIM IS NOT COGNIZABLE
    ON HABEAS REVIEW. ........................................................................................ 25

CONCLUSION ...................................................................................................... 27

## INTRODUCTION

On November 28, 2015, after an escalating pattern of harassment and abuse against his girlfriend ("the victim") in violation of an order of protection,[1] Gary Kemp ("petitioner") followed the victim and her mother into their apartment and, over the next several hours, terrorized both women. He threatened, and then cut, them with a butcher knife, beat them with his fists, and ordered them to undress. Petitioner also choked the victim into unconsciousness. Early the next morning, petitioner took the victim into a bedroom and raped her. While petitioner was so occupied, the victim's mother was able to flee and summon police. While incarcerated prior to trial, petitioner again violated an order of protection by contacting the victim.

In this *pro se* 28 U.S.C. § 2254 habeas corpus action, petitioner seeks review of the resulting 2017 judgment of New York State Supreme Court, New York County, convicting him upon a jury verdict of Predatory Sexual Assault, Aggravated Criminal Contempt, and four counts of first-degree Criminal Contempt, and sentencing him to an aggregate prison term of 20 years to life. (ECF #6, "Pet." at 1.)[2] The Appellate Division, First Department, affirmed the conviction and, on December 4, 2019, the New York Court of Appeals denied leave to appeal. *People v. Kemp*, 176 A.D.3d 481 (1st Dep't), *lv. denied*, 34 N.Y.3d 1079 (2019).

---

[1] This memorandum refers to petitioner's victim by her initials in order to keep her identity confidential, pursuant to N.Y. Civil Rights Law § 50-b(1).

[2] Page citations to petitioner's pleadings refer to the page numbers generated by ECF appearing in the upper-right corner of each page.

The Petition raises four claims, none of which affords a basis for habeas relief. Petitioner's first and third claims state, in their entirety, "ineffective counsel" and "newly discovered evidence," respectively. (Pet. 5, 8.) Habeas relief is unavailable for these claims because they fail to allege any facts in support as required by Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts. Indeed, there is no way to tell from the Petition whether the new evidence petitioner claims to have discovered exculpates or further implicates him. In any event, petitioner never raised either claim in any state court, leaving the claims in the Petition unexhausted.

Next, petitioner claims that the jury's verdict was against the weight of the evidence. Such a claim is wholly a creature of New York law and therefore not cognizable on habeas review. And, while weight of the evidence claims raised by *pro se* petitioners are sometimes reviewed under the rubric of legal sufficiency, here the Court may not reach the merits because any legal sufficiency claim was not exhausted in the state courts. Although petitioner challenged the weight of the evidence before the Appellate Division, he failed to raise this claim in his leave application to the Court of Appeals, leaving it unexhausted and procedurally defaulted.

Lastly, petitioner's excessive sentence claim is not cognizable because his 20 year-to-life sentence for the predatory sexual assault conviction was lawful under New York law. Accordingly, the Petition should be dismissed and no certificate of appealability should issue.

4

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    Pretrial Proceedings**

In December 2015, petitioner was indicted for Predatory Sexual Assault (N.Y. Penal Law § 130.95), three counts of Burglary in the First Degree as a Sexually Motivated Felony[3] (Penal Law §§ 140.30, 130.91), Aggravated Criminal Contempt (Penal Law § 215.52), and three counts of Criminal Contempt in the First Degree (Penal Law § 215.51). While in pretrial custody, petitioner called the victim in violation of an order of protection, resulting in a second indictment charging an additional count of first-degree criminal contempt. Both indictments were consolidated for trial, which began in January 2017 before New York State Supreme Court Justice Daniel Conviser and a jury.

**B.    The Trial**

**1.    The People's Case**

The victim testified that she met petitioner in the spring of 2015 when they both participated in an inpatient alcohol rehabilitation program. (T. 147, 246.)[4] A few weeks after the program ended, they began an intimate relationship. (T. 148.) At first, everything was "normal." (T. 148.) However, after a couple of months, petitioner became controlling and "aggressive," demanded to know the victim's whereabouts

---

[3] The jury acquitted petitioner of the burglary charges.

[4] "T.," or a witness's name, followed by a page number refers to the transcript of trial beginning on January 9, 2017.

5

and activities "all the time," and frequently called the victim demeaning names, such as "bitch" and "stupid," often in public. (T. 150-52, 303.) The victim lived with her mother, who noticed that, as the victim's relationship with petitioner deteriorated, the victim began paying less attention to her appearance. (T. 149, 364-65.)

Petitioner also physically abused the victim. He would grab her arms, push her and smack her in the face. (T. 155-56.) This abuse left bruises on her face and neck, her arms and legs, and her back. (T. 154-60; T. 365.) When the mother noticed the bruises, she said that petitioner was no longer welcome in their apartment. (T. 154; T. 365-66.) The victim tried to break up with petitioner, but he kept calling her and "coming around" as if nothing had changed. (T. 156-57.)

In September 2015, petitioner's violence escalated when, during an argument, he punched the victim in the face with a closed fist. (T. 162, 165.) The victim reported this incident to police and obtained an order of protection prohibiting petitioner from having any contact with the victim for five years. (T. 162-66; PO Walsh: 75-78.) However, the victim continued to see petitioner on occasion because she believed that the punch was an isolated incident of serious violence, as compared to petitioner's prior behavior of "just smacking and verbal abuse." (T. 167).

On November 23, 2015, petitioner approached the victim as she left a daily outpatient substance abuse program. (T. 169.) The two went to Central Park where they had a long conversation about their relationship. The discussion degenerated into an argument, and petitioner spit in the victim's face, called her names, and grabbed her arms. After leaving that encounter, the victim determined to leave the

relationship for good and reported petitioner's abuse to police. (T. 171-74; PO Almonte: 33-38.)

The very next day, November 24, petitioner accosted the victim outside of her and the mother's apartment building, grabbed her by her arms and hair, and pushed her into some garbage cans. A neighbor heard the commotion and escorted the victim inside the building. (T. 174-76.) The following day, the victim reported petitioner's abuse during a home visit by police to follow up on the victim's report on November 23. (Almonte: 39-43; T. 176-78.)

On November 28, 2015, the victim went to the hospital because she was feeling "drained," "out of it," and weak. (T. 178-79, 279; T. 380.) She was at the hospital for several hours, during which she spoke with petitioner by phone. Ultimately, petitioner met the victim at the hospital and rode home with her in a taxi. (T. 179-80, 254-55.) When they arrived at her apartment building, the mother came downstairs to pay the fare. The mother was surprised when she saw petitioner with the victim because she knew that the victim had an order of protection against him. The mother took the victim inside and they rode the elevator up to their apartment on the third floor. (T. 180-82, 255-59, 277, 283; T. 380-82, 431-36.)

Upon entering the apartment, the mother turned and saw petitioner standing in her doorway. She reminded petitioner of the order of protection and announced that she was going to call the police. (T. 284; T. 382-83, 437-38.) However, as she lifted her cell phone to call, petitioner "jumped" her, grabbed the phone and threw it against a wall, and repeatedly punched the mother in the face and neck, causing her to fall

7

to the ground. (T. 382-84, 411.) The victim tried to intervene but petitioner also punched her in the face several times. (T. 184-85, 384-85.)

Petitioner then double-locked the front door of the apartment and destroyed the landline phones. He went into the kitchen and retrieved an eight-inch butcher knife. Pointing the knife at the mother, petitioner said, "which of 'youse' is going first" or "which one of you are going to die first." (T. 182-83, 186-87, 281-84, 302; T. 382, 385, 389-90.) When the victim attempted to place herself between her mother and petitioner, petitioner grabbed the victim by the neck and pushed the blade of the knife about "two inches" into her mouth. (T. 183-84, 187-88; T. 385.) The mother grabbed for the blade and attempted to wrestle the knife away from petitioner. During that struggle, the mother sustained a deep cut to the palm of her hand. However, her efforts caused the blade to separate from the handle and allowed her to slide the blade underneath the living-room couch. (T. 185, 188, 289-90; T. 385-86.)

Petitioner, meanwhile, continued holding the victim's neck and choking her, to the point that she lost consciousness for a "few minutes." (T. 185- 86, 386.) When she regained consciousness, petitioner ordered both women into a bedroom and told them to remove their clothing. (T. 189-90, 307; T. 387, 390.) The mother removed her sweatshirt, hoping that she could keep petitioner's attention on herself rather than the victim. (T. 189; T. 387.) From the bedroom, the mother could see that petitioner had armed himself with two steak knives and was drinking liquor. (T. 190; T. 390-91, 443.)

At approximately 4:00 a.m. the following morning, petitioner forced the victim into another bedroom, removed his pants and then went into the bathroom. (T. 191-92, 307; T. 392-94.) While petitioner was in the bathroom, the victim instinctively checked his pants pockets, where she found the steak knives petitioner had been carrying. The victim discarded the knives and then quickly sat on the bed so that petitioner would not know that she had been going through his pants. (T. 191-92, 200, 281-82.) The victim did not attempt to flee because she refused to abandon her mother. (T. 192-93.) Petitioner returned to the bedroom, straddled the victim, choked her again and, with his hands wrapped around her neck, petitioner forcibly penetrated the victim's vagina with his penis. (T. 194-95.)

From the other bedroom, the mother heard petitioner assaulting the victim and heard the victim pleading with petitioner to stop and saying that he was hurting her. (T. 395, 441-42.) The mother ran out of the apartment and to a police precinct to summon help. (T. 395-96; PO Abreu: 330.) When officers arrived at the apartment, they found petitioner in bed with the victim and took him into custody. Police recovered a steak knife from the bedside dresser, as well as the broken butcher knife from underneath the living room couch. (PO Jackson: 55-58; Janisch: 88, 91-93; PO Irwin: 133-38 Abreu: 332-35.)

The victim was treated at the hospital for severe bruising to her right eye, bruising to her chin and shoulder, abrasions to her neck and cuts to her upper lip. (T. 202-06; Schnoor: 524-25.) A swab taken from the victim's vulvar area contained semen with DNA belonging to either petitioner or one of his paternal relatives. (Det.

9

Roadarmel: 354-56; Lobasso: 551-52, 559, 564, 581-82.) A blood stain on the blade of the butcher knife contained the mother's DNA; another blood stain near the point of the knife contained a mixture of DNA including the mother's and the victim's DNA. (Roadarmel: 354; Lobasso: 568-70, 572-75, 584-87.) A swab taken from the handle contained a mixture of DNA and, while the victim and the mother could be excluded from the mixture, petitioner could not be. (Lobasso: 576-78, 588-91.)

Two days later, on November 30, 2015, the victim and the mother each obtained a temporary order of protection against petitioner. (Grajales: 102-04; T. 211-12.) Between December 3 and December 7, 2015, petitioner called the victim five times. (McClean: 119-23; T. 212-13, 220, 222, 226.) While charges were pending, the victim accepted calls from petitioner and visited him in jail because she "wanted answers" as to why petitioner had raped and beat her. (T. 214-15, 264.) Julia Hochstadt, an expert in the "dynamics of intimate partner violence," testified that it was common in relationships involving domestic abuse for the victim to continue to make efforts to communicate with and see the abusive partner during periods of physical separation—for instance, when the abuser is incarcerated—either out of fear or because the victim "long[s] for" prior "honeymoon parts" of the relationship. (Hochstadt: 496-97.)

### 2.   The Defense Case

Petitioner presented no evidence.

### 3.    Verdict and Sentence

The jury found petitioner guilty of Predatory Sexual Assault (Penal Law § 130.95(1)(b), Aggravated Criminal Contempt (Penal Law § 215.52(1)), and four counts of first-degree Criminal Contempt (Penal Law §§ 215.51(b)(i), (b)(iv), and (b)(v)). On February 7, 2017, the court sentenced petitioner to concurrent prison terms of 20 years to life on the predatory sexual assault count, 2½ to 7 years on the aggravated contempt count, and 1⅓ to 4 years on each of the first-degree contempt charges.

### C.    Direct Appeal

In a counseled direct appeal brief, petitioner argued that his conviction must be reversed because: (1) the Predatory Sexual Assault verdict was against the weight of the evidence (SR25-34); (2) the trial court did not give petitioner sufficient time to prepare a defense to the People's domestic violence expert (SR34-43); and (3) petitioner's sentence was excessive (SR43-47). Petitioner's weight of the evidence claim argued that the evidence had failed to prove that petitioner used or threatened the immediate use of the knives "[i]n the course of the commission of" his rape of the victim, as required by the Predatory Sexual Assault statute. Penal Law § 130.95(1)(b). The People filed an opposing brief (SR50-104) and petitioner replied (SR106-25).

The Appellate Division unanimously affirmed. *People v. Kemp*, 176 A.D.3d 481 (1st Dep't 2019) (SR126-28). The court held that the predatory sexual assault conviction was not against the weight of the evidence because the jury could view the

entire episode inside the apartment as a continuing incident and, so viewed, the evidence established that petitioner used or threatened immediate use of the knives in the course of a first-degree rape. The court further concluded that there was no basis for disturbing any of the jury's credibility determinations. *Id.* at 481. The court declined to exercise its interest of justice authority, *see* N.Y. C.P.L. § 470.15(6)(b), to reduce the sentence.[5]

Petitioner moved through counsel for leave to appeal to the New York Court of Appeals. (SR129-34.) Petitioner only sought leave on the claim involving the expert witness. The People opposed leave (SR135-37) and, on December 4, 2019, the Court of Appeals denied leave to appeal. *People v. Kemp*, 34 N.Y.3d 1079 (2019) (SR138).

---

[5] The court concluded that the People's noticing of the expert on the eve of trial did not violate New York's discovery rules, the timing of the notice did not reflect any bad faith by the prosecution, petitioner had not established any prejudice to the defense and, in any event, any error was harmless. The court rejected any constitutional claim based on the timing of the notice as unpreserved and, in the alternative, as meritless. *Id.* In any event, petitioner raises no such claim in this Court.

# ARGUMENT

## POINT I

**PETITIONER'S INEFFECTIVE COUNSEL AND NEWLY DISCOVERED EVIDENCE CLAIMS SHOULD BE DISMISSED BECAUSE THEY LACK ANY SUPPORTING ALLEGATIONS. IN ANY EVENT, BOTH CLAIMS ARE WHOLLY UNEXHAUSTED.**

### A.   The Ineffective Counsel and Newly Discovered Evidence Claims Should Be Dismissed For Lack of Any Supporting Allegations

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts require petitioners to "state the facts supporting each ground" for relief. "'It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief.'" *Cruz v. Lee*, 12 Civ. 6119 (CS)(LMS), 2016 U.S. Dist. LEXIS 69475, at *11 (S.D.N.Y. May 23, 2016) (quoting *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013)) (rejecting ineffective assistance claim that failed to allege "specific factual contentions regarding how counsel was ineffective").

Here, petitioner's ineffective assistance and newly discovered evidence claims fail to allege any facts in support. Moreover, while the Court must construe the Petition liberally and interpret it to raise the strongest arguments it suggests, *see Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006), the claims in the Petition do not suggest any arguments. Nor can the Court draw inspiration from petitioner's state court filings because he never raised ineffective counsel or newly discovered evidence claims in state court, as explained in the next section.

13

Accordingly, both claims should be summarily rejected. *See*, *e.g.*, *Smith v. Supt. of Elmira Corr. Facility*, 17 Civ. 8740 (VSB), 2020 U.S. Dist. LEXIS 179361, at *7-8 (S.D.N.Y. Sep. 29, 2020) (rejecting actual innocence claim for failure to allege "any facts whatsoever that would support" such a claim).

**B.  The Ineffective Counsel and New Evidence Claims Are Wholly Unexhausted**

Even were the Court able to discern a basis for either claim, relief would be barred because petitioner failed to exhaust state court remedies as to both claims. Habeas relief pursuant to 28 U.S.C. § 2254 is unavailable unless a petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State courts must be given the first "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *accord O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (exhaustion requirement "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts"). In order to exhaust, a petitioner must "fairly present" each claim in each of the appropriate state courts, including a state court with powers of discretionary review, "thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29.

Here, petitioner has never presented an ineffective trial counsel claim to any New York court. While petitioner alleges that the claim was raised on direct appeal (Pet. ¶12 (Ground One) (c)), he also omits an ineffective counsel claim when he lists

the claims actually raised on that appeal (Pet. ¶9(f).)[6] As described above, on appeal petitioner only raised claims that the Predatory Sexual Assault verdict was against the weight of the evidence, that the trial court had erred by not continuing the trial to give the defense more time to prepare a challenge to the People's expert, and that the sentence was excessive. (SR2-3.) Nor has petitioner filed any post-conviction motions challenging trial counsel's performance. (Pet. ¶10.) Similarly, the new evidence claim is wholly unexhausted as petitioner never raised such a claim in state court. Petitioner did not mention such a claim in his direct appeal briefs, much less raise such a claim in federal constitutional terms. Accordingly, the ineffective counsel and new evidence claims are unexhausted. Moreover, because on this record the claims as alleged provide no basis for an evaluation of the merits, this Court should exercise its authority to deny the unexhausted claims pursuant to 28 U.S.C. § 2254(b)(2).

## POINT II

**PETITIONER'S WEIGHT OF THE EVIDENCE CLAIM IS NOT COGNIZABLE ON HABEAS REVIEW. ANY LEGAL SUFFICIENCY CLAIM SUGGESTED BY THE PETITION IS WHOLLY UNEXHAUSTED AND, IN ANY EVENT, MERITLESS.**

Petitioner's bare claim that the "weight of the evidence doesn't support [the] verdict" (Pet. at 7) is not cognizable on federal habeas review. To the extent the

---

[6] Because petitioner alleges that the claim was raised by appellate counsel on direct appeal, respondent assumes petitioner is claiming ineffective assistance of trial, rather than appellate, counsel.

Petition might be liberally construed to assert a legal sufficiency claim grounded in due process, any such claim is unexhausted and procedurally defaulted. Moreover, there was legally sufficient evidence to support petitioner's conviction.

**A.    The Claim is Not Cognizable.**

The argument that a verdict is against the weight of the evidence states a pure state law claim grounded in C.P.L. § 470.15(5) which is not cognizable on habeas corpus. *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011); *James v. Keyser*, 20 Civ. 3468 (JPC)(SDA), 2021 U.S. Dist. LEXIS 51330, at *4 (S.D.N.Y. Mar. 18, 2021); *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation omitted). The claim should be denied on that basis.

**B.    Construed as a Legal Sufficiency Claim, the Claim is Unexhausted and Meritless.**

**1.    Any legal sufficiency claim is unexhausted and procedurally defaulted.**

The Petition makes no mention of a legal sufficiency claim. However, in exercising its duty to construe the Petition liberally, *Triestman*, 470 F.3d at 474; *Fennell v. McCarthy*, 20 Civ. 3764 (GHW)(KNF), 2021 U.S. Dist. LEXIS 49152, at *10 (S.D.N.Y. Mar. 16, 2021), the Court may interpret petitioner's weight of the evidence claim as a federal claim that the evidence was legally insufficient. However, any such claim is unexhausted and procedurally defaulted because, like the instant Petition, petitioner's state court papers never asserted a legal sufficiency claim.

The weight of the evidence claim petitioner raised in state court did not

exhaust a legal sufficiency claim based on federal due process. New York law expressly distinguishes weight of the evidence claims, based on the Appellate Division's factual review power under C.P.L. § 470.15, from legal sufficiency claims, which are legal claims based on federal due process.[7] Given the clear distinction between weight and legal sufficiency claims, district courts within the Second Circuit commonly hold that state-court briefs alleging weight claims do not exhaust legal sufficiency claims.[8]

Here, petitioner's briefing in the Appellate Division argued solely "weight of the evidence," expressly citing C.P.L. § 470.15(5). (SR25, 113.) Similarly, the People's opposition brief observed that petitioner's claim asserted only weight of the evidence, not legal sufficiency. (SR72 n.9.) *See Lopez v. Sup't of Five Points Corr. Fac.*, 14 Civ. 4615, (RJS)(JLC), 2015 U.S. Dist. LEXIS 35903, at *36-37 (S.D.N.Y. Mar. 23, 2015) (concluding that petitioner "disclaimed any challenge to the sufficiency of the evidence in his state court appeals" where People, in their opposition brief, pointed

---

[7] Thus, while the New York Court of Appeals may consider the issues of law attendant upon a legal sufficiency claim, it may not review a weight of the evidence claim because, unlike the Appellate Division, the Court of Appeals lacks jurisdiction to address issues of fact. *See Montgomery v. Donnelly*, 03 Civ. 0270, 2009 U.S. Dist. LEXIS 62234, at *8-9 (W.D.N.Y. July 20, 2009).

[8] *See Patterson v. Pingotti*, 16 Civ. 4259 (VB)(PED), 2020 U.S. Dist. LEXIS 106067, at *38-39 (S.D.N.Y. June 15, 2020) (citing *Lopez v. Sup't of Five Points Corr. Fac.*, 14 Civ. 4615, (RJS)(JLC), 2015 U.S. Dist. LEXIS 35903, at *34-44 & n.9 (S.D.N.Y. Mar. 23, 2015)); *Romero v. Miller*, 18 Civ. 0381 (GLS)(ATB), 2019 U.S. Dist. LEXIS 67160, at *13-17 (N.D.N.Y. Apr. 18, 2019); *Madrid v. Smith*, 08 Civ. 5262, 2012 U.S. Dist. LEXIS 36158, at *14-16 (E.D.N.Y. Mar. 13, 2012).

out that petitioner did not dispute legal sufficiency). And the Appellate Division's decision analyzed the claim solely as to weight, not legal sufficiency. *Kemp*, 176 A.D.3d at 481.

Further, any legal sufficiency claim presented to the Appellate Division was an extremely narrow one. In order to exhaust a claim for federal habeas review, a petitioner must present the state courts with a claim based upon the same factual and legal premises as the claim in the habeas Petition. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Sanabria v. Martuscello*, 15 Civ. 1534 (CS)(LMS), 2019 U.S. Dist. LEXIS 165808, at *17 (S.D.N.Y. Sep. 16, 2019) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191-92 (2d Cir. 1982)).

Here, the factual and legal premises of the claim raised on appeal were limited to the Predatory Sexual Assault conviction, pursuant to which the People proved that petitioner committed first-degree rape upon the victim and that, in the course of and in furtherance of that rape, petitioner used or threatened the immediate use of a dangerous instrument. Penal Law § 130.95(1)(b) (T.698.) Indeed, petitioner's state court claim was limited further to the second of these two elements and, even more specifically, to the discrete argument that petitioner's "use and threatened use of the knives was separate and distinct from the rape and not in the 'course' of the sexual assault." (SR25.) Thus any legal insufficiency claim was exhausted to this argument only.

Lastly, petitioner failed to exhaust even this narrow claim because he omitted it from his leave application to the New York Court of Appeals. *See Baldwin*, 541 U.S.

18

at 29; *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (in order to exhaust claim on direct appeal, petitioner must present it in leave application to Court of Appeals).[9] Accordingly, petitioner's claim is unexhausted.

While unexhausted, the Court should deem the claim exhausted and procedurally defaulted because petitioner now lacks a state court venue in which to exhaust it. Petitioner cannot raise, in a second direct appeal, a federal legal insufficiency claim because he has already exercised the one—and only one—appeal to the Appellate Division and leave application to the Court of Appeals to which he is entitled under state law. *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).

Petitioner cannot avoid this procedural default unless he can show cause for the default and prejudice attributable thereto, or that "failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 749-50. Petitioner has not alleged, much less established, any "cause" to excuse his failure to raise a federal claim on direct appeal. And, because petitioner has not established cause, this Court need not consider whether he has suffered prejudice. *See McCleskey v. Zant*, 499 U.S. 467, 502 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 494 (1986)); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

---

[9] Indeed, the fact that petitioner omitted the weight of the evidence claim from the leave application is further proof that he did not intend to assert a legal sufficiency claim because, as noted above at note 7, the Court of Appeals has jurisdiction over the latter, but not the former, class of claims.

In any event, petitioner cannot establish prejudice because, as explained in the next section, the legal sufficiency claim is meritless. Petitioner also cannot not establish a miscarriage of justice, *i.e.,* that he is actually innocent. *See Aparicio*, 269 F.3d at 90. As explained above in Point I, petitioner's newly discovered evidence claim contains no supporting allegations at all, much less any that would support an actual innocence claim. Accordingly, any legal sufficiency claim in the Petition should be denied as unexhausted and procedurally defaulted.

### 2.   Petitioner was convicted upon legally sufficient evidence.

In any event, any legal sufficiency challenge to petitioner's conviction would be meritless. As a threshold matter, although the Appellate Division did not expressly address legal sufficiency, the Court's decision on weight of the evidence necessarily decided legal sufficiency as well. "Under New York law, a weight-of-the-evidence claim requires more exacting review than an insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the State's witnesses. Therefore, to the extent the Appellate Division decided that [petitioner's] conviction was not against the weight of the evidence, it necessarily decided that there was [legally] sufficient evidence to support the verdict." *Parker v. Ercole*, 666 F.3d 830, 833-35 (2d Cir. 2012); *accord Lopez*, 2015 U.S. Dist. LEXIS 35903 at *45. Accordingly, the Appellate Division's effective denial of any legal sufficiency claim must be afforded the substantial deference due state court determinations under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified in pertinent

part at 28 U.S.C. § 2254(d)-(e). *See Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004));
*Loucks v. Capra*, 16 Civ. 3115 (NSR)(JCM), 2019 U.S. Dist. LEXIS 54621, at *40
(S.D.N.Y. Mar. 28, 2019); *Lopez*, 2015 U.S. Dist. LEXIS 35903 at *46.

        Under the AEDPA, this Court may not grant relief unless the Appellate
Division's decision "was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court of the United
States," or that decision "was based on an unreasonable determination of the facts in
light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).
The Supreme Court has made clear that the AEDPA standard of review is extremely
narrow, and is intended only as "a guard against extreme malfunctions in the state
criminal justice systems," not as "a substitute for ordinary error correction through
appeal." *Ryan v. Gonzales*, 568 U.S. 57, 75 (2013) (quoting *Harrington v. Richter*, 562
U.S. 86, 102 (2011)); *accord Fuentes v. Griffin*, 829 F.3d 233, 245 (2d Cir. 2016);
*Vasquez v. New York*, 17 Civ. 697 (VEC)(OTW), 2020 U.S. Dist. LEXIS 35839, at *20
(S.D.N.Y. Feb. 27, 2020). To satisfy AEDPA's high bar for habeas relief, a petitioner
must establish that "the state court's ruling on the claim being presented in federal
court was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement."
*Richter*, 562 U.S. at 102-03 (2011); *see also Mays v. Hines*, __U.S. __, 2021 U.S. LEXIS
1736, at *10 (Mar. 29, 2021) ("All that matter[s]" under AEDPA's standard of review
is whether state court "managed to blunder so badly that every fairminded jurist
would disagree") (citing *Knowles v. Mirzayance*, 556 U. S. 111, 123 (2009)). Petitioner

cannot carry that onerous burden here.

The Appellate Division's effective rejection of a legal insufficiency claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). The relevant Supreme Court law was announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), which holds that, as an essential component of due process, no criminal defendant shall be convicted except upon "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Id.* at 313-16; *accord In re Winship*, 397 U.S. 358 (1970). Evidence is legally sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original); *accord Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam); *Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007).

The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam); *accord Parker v. Matthews*, 567 U.S. 37, 43 (2012); *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010). "First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Coleman*, 566 U.S. at 651 (quoting *Cavazos*, 565 U.S. at 2). "And second, on habeas review, a federal court may

not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (citations omitted). That is, the Writ must be denied if it is "possible" that a fairminded jurist could agree with the state court's decision. *Richter*, 562 U.S. at 103. Here, the jury had more than sufficient evidence to convict petitioner, such that it is at least "possible" that a fairminded jurist could agree with the Appellate Division's decision denying petitioner's claim.

"Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense.'" *Coleman*, 566 U.S. at 655. In order to convict petitioner of Predatory Sexual Assault, the People were required to prove that: (1) petitioner committed a first-degree rape—that is, sexual intercourse without consent by forcible compulsion—upon the victim; and (2) in furtherance of that rape, petitioner possessed a dangerous instrument and used or threatened the immediate use of that dangerous instrument. Penal Law §§ 130.35(1), 130.95(1)(b) (T.697-702.)

Here, the People proved petitioner's predatory sexual assault upon the victim by overwhelming evidence. The victim's and the mother's testimony, corroborated by the physical evidence recovered from the apartment, proved beyond any reasonable doubt that petitioner both threated to use and did use kitchen knives in furtherance of his hours-long assault on both victims, culminating in the rape of the victim. Petitioner entered the apartment and physically beat both women. Then, locking the door to the apartment and arming himself with a butcher knife and steak knives, he

23

threatened to kill the victim and the mother. To show that he meant his threats, petitioner stuck the butcher knife into the victim's mouth, cutting her. In the ensuing struggle with the mother, he cut the mother's hand as she attempted to help the victim.

Over the course of the next few hours, petitioner held the mother and the victim captive by, in large part, displaying the steak knives for both victims to see. (T. 190; T. 390-91, 443.) Then petitioner, still armed with the steak knives, took the victim into a bedroom and forcibly raped her. The victim testified that she found the steak knives in petitioner's pants pockets just before the rape. When petitioner was taken into custody, one of those knives was recovered from the bedside table right next to where the rape occurred. (Irwin: 136-37; T. 191-92, 200, 281-82; Abreu: 334-35.) Thus, the evidence showing that petitioner used the knives to subdue the victim and the mother, to hold them captive and, ultimately, to compel the victim to submit to intercourse was sufficient to establish the elements of Predatory Sexual Assault.

In state court, petitioner argued that his conduct as proved at trial did not meet the requirement of the Predatory Sexual Assault statute that petitioner used the knives "in the course of the commission of" his rape of the victim. (SR25-34.)  But the jury reasonably found that petitioner's use of various knives to hold the victim and her mother captive in the hours preceding the rape met this requirement. After all, the rape resulted directly from that forced captivity, which petitioner effectuated by using the butcher knife to cut and frighten the women, and by later keeping himself armed with the steak knives, one of which was found on a bedside table next to where

the rape occurred. The Appellate Division's conclusion that the People's proof satisfied this element "[w]hen the events at issue are viewed as a continuing incident," *Kemp*, 176 A.D.3d at 481, was likewise a reasonable one; at a minimum, it was not objectively unreasonable such that no fair-minded jurist could agree with it. While the New York courts have not definitely interpreted the relevant language of the predatory sexual assault statute, the New York Legislature enacted that statute in order to increase penalties for certain sexual assaults containing the aggravating factor of a defendant's use of a dangerous instrument. (SR83.) The Appellate Division could reasonably conclude here that petitioner's use of knives to subdue his rape victim and then hold her captive for hours preceding the rape fell within the scope of crimes for which these enhanced penalties were warranted. Defendant cites no authority to support a contrary view.

Accordingly, because the jury's verdict of guilt on the predatory sexual assault count was not irrational, and because the Appellate Division's decision that the weight of the evidence supported that verdict was not unreasonable, habeas relief is unavailable for a sufficiency of the evidence claim.

## POINT III

### THE EXCESSIVE SENTENCE CLAIM IS NOT COGNIZABLE ON HABEAS REVIEW.

Petitioner's excessive sentence claim (Pet. at 10) is not cognizable on federal habeas review. It is well-settled that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence imposed was within the

25

range prescribed by state law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Valdez v. Stewart*, 17 Civ. 4121 (KPF), 2021 U.S. Dist. LEXIS 29614, at *17 (S.D.N.Y. Feb. 17, 2021).

Here, petitioner's indeterminate 20 year-to-life sentence on the top count of predatory sexual assault, a class A-II felony, was a lawful sentence. *See* Penal Law § 70.00(2)(a), (3)(a)(ii). Under New York law, petitioner was subject to an indeterminate sentence for predatory sexual assault ranging from a minimum of 10 to 25 years to a maximum of life. Penal Law § 70.00(3)(a)(ii). Petitioner has never claimed that his sentence was illegal; rather, in state court he argued only that the Appellate Division should exercise its statutory "interest of justice" discretion to reduce the sentence. (SR43-47.) Because petitioner's sentence was within the limitations provided by the statute, his claim is not cognizable.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should deny the petition for a writ of habeas corpus and should not issue a certificate of appealability.

Dated:    New York, New York
          April 14, 2021

                                        Respectfully submitted,

                                        LETITIA JAMES
                                        *Attorney General*
                                        *State of New York*
                                              Attorney for Respondent

                              By:   /s/
                                        MATTHEW KELLER
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-6072

PRISCILLA STEWARD
MATTHEW KELLER
 *Assistant Attorneys General*
       *of Counsel*